# *HINSON SNIPES, LLP*

Princeton Forrestal Village
116 Village Boulevard, Suite 307
Princeton, New Jersey 08540
By: Tracey C. Hinson, Esquire
Attorney ID#: 034542002
(609) 452-7333 - Fax (609) 452-7332
Attorney for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA BRINSON,<br><br>            Plaintiff,<br><br>vs.<br><br>SHAKEERA S. WILLIAMS, YASIR W. HARRISON, CARLOS D. MELENDEZ, AIDA L. MELENDEZ, CITY OF NEWARK, CHIEF DARNELL HENRY, in his official and individual capacity, DIRECTOR SAMUEL DeMAIO, in his official and individual capacity, P.O. A. STOKES, in his official and individual capacity, P.O. MALCOLM P. KIRKLAND, in his official and individual capacity, NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION ("PLIGA"), JOHN/JANE DOES 1-10, ABC CORPORATION, and XYZ PARTNERSHIP 1-10, representing one or more fictitious persons or entities consisting of Directors, Officers, Principles, Partners, Boards, Board Members or Representatives or Agents, individually, jointly and severally,<br><br>            Defendants. | Civil Action No. 2:20-CV-9606<br><br><br>**FIRST AMENDED COMPLAINT &<br>JURY DEMAND** |

Plaintiff, **PATRICIA BRINSON**, residing in the City of Newark, County of Essex, and State of New Jersey, by way of Complaint, states:

**FIRST COUNT**

1.   On June 13, 2018, Plaintiff, **PATRICIA BRINSON**, was a lawful pedestrian, traveling west in the crosswalk at the intersection of 16th Avenue and 13th Street, in the City of Newark, County of Essex, and State of New Jersey.

2.   At the same time and place Defendant, **SHAKEERA WILLIAMS**, residing at 102 South 10th Street, in the City of Newark, County of Essex, and State of New Jersey, was the operator of a 2003 black Honda Accord (vehicle #1), which was traveling north on 16th Avenue, at its intersection with South 13th Street, in the City of Newark, County of Essex, and State of New Jersey.

3.   Defendant, **SHAKEERA WILLIAMS**, operated, controlled, and maintained her vehicle in a careless, reckless, negligent, and dangerous manner, causing her vehicle to violently crash into Plaintiff, who was lawfully in the crosswalk.

4.   Defendant, **SHAKEERA WILLIAMS**, operated said vehicle in violation of N.J.S.A. 39:4-50; 39:4-96; 9:4-85-1; 39:4-97A, 39:4-49.1, 39:4-81; 39:3-40, 39:3-40-1, 30:3-40 (H) (1), and 39:3-29A, and other motor vehicle laws of the State of New Jersey.

5. The crash in question occurred as a direct and proximate result of the careless, inattentive, reckless, and negligent conduct of Defendant, **SHAKEERA WILLAIMS**.

6. Defendant, **YASIR W. HARRISON**, residing at 404 Union Avenue, in the City of Irvington, County of Essex, and State of New Jersey, was the owner of the motor vehicle driven by Defendant, **SHAKEERA WILLAIMS**, and gave his permission and approval to said Defendant, as his agent and servant, to operate his vehicle. As such, Defendant, **YASIR W. HARRISON**, is vicariously responsible for the actions of Defendant, **SHAKEERA WILLAIMS**, in her operation of his vehicle.

7. Defendant, **YASIR W. HARRISON**, negligently controlled, maintained and entrusted his vehicle to Defendant, **SHAKEERA WILLAIMS**, to be operated in a careless, reckless, negligent, and dangerous manner which caused his vehicle to crash into Plaintiff who was lawfully in the crosswalk.

8. The crash in question occurred as a direct and proximate result of Defendant, **YASIR W. HARRISON'S** negligence in entrusting his vehicle to Defendant, **SHAKEERA WILLAIMS**, to be operated in a careless, reckless, negligent manner, and dangerous manner.

9. As a direct and proximate result of the negligence of Defendants **SHAKEERA WILLIAMS** and **YASIR W. HARRISON**, Plaintiff **PATRICIA BRINSON**, suffered and sustained serious, severe, disabling

and permanent injuries that required and still requires the care and treatment of physicians, hospitalization and medication, have and will in the future be caused to obtain medical treatment, and have will in the future be caused to refrain from her daily activities and normal pursuits.

**WHEREFORE**, Plaintiff, **PATRICIA BRINSON**, demands judgment against Defendants **SHAKEERA WILLIAMS** and **YASIR W. HARRISON** for:

A. General damages

B. Compensatory damages;

C. Cost and interest;

D. Attorneys fees;

E. Any other relief the Court deems just and equitable.


## SECOND COUNT

Plaintiff, **PATRICIA BRINSON**, repeats the allegations contained in the First Count as though more fully set forth at length.

1.    At the same time and place Defendant, **CARLOS D. MELENDEZ**, residing at 42 Oak Avenue, in the City of Irvington, County of Essex and State of New Jersey, was the operator of a black 1999 GMC Yukon (vehicle #2), which was traveling west on 16th Avenue, at its intersection with South 13th Street, in the City of Newark, County of Essex, and State of New Jersey.

2.    Defendant, **CARLOS D. MELENDEZ,** operated, controlled, and maintained his vehicle in a careless, reckless, negligent, and dangerous manner, by crashing his into vehicle #1, which was being operated by Defendant **SHAKEERA WILLIAMS,** which caused vehicle #1 to lose control and violently crash into Plaintiff who was lawfully in the crosswalk.

3.    Defendant, **CARLOS D. MELENDEZ,** operated said vehicle in violation of <u>N.J.S.A.</u> 39:4-96; 39:4-97, and other motor vehicle laws of the State of New Jersey.

4.    The crash in question occurred as a direct, proximate result of the careless, reckless, and negligent conduct of Defendant, **CARLOS D. MELENDEZ.**

5.    Defendant, **AIDA L. MELENDEZ,** residing at 404 Union Avenue, in the City of Irvington, County of Essex, and State of New Jersey, was owner of the motor vehicle driven by Defendant, **CARLOS D. MELENDEZ,** and gave permission and approval to said Defendant, as her agent and servant, to operate her vehicle. As such, Defendant, **AIDA L. MELENDEZ,** is vicariously responsible and liable for the actions of Defendant, **CARLOS D. MELENDEZ** in his operation of the vehicle.

6.    Defendant, **AIDA L. MELENDEZ,** negligently controlled, maintained and entrusted her vehicle to Defendant, **CARLOS D. MELENDEZ,** to be operated in a careless, reckless, negligent, and

dangerous manner, and caused her vehicle to crash into Plaintiff who was lawfully in the crosswalk.

7. The crash in question occurred as a direct and proximate result of Defendant, **AIDA L. MELENDEZ'** negligence in entrusting her vehicle to Defendant, **CARLOS D. MELENDEZ**, to be operated in a careless, reckless, negligent, and dangerous manner.

8. As a direct and proximate result of the negligence of Defendants, **CARLOS D. MELENDEZ** and **AIDA L. MELENDEZ**, Plaintiff **PATRICIA BRINSON**, suffered and sustained serious, severe, disabling and permanent injuries that required and still requires the care and treatment of physicians, hospitalization and medication, have and will in the future be caused to obtain medical treatment, and have will in the future be caused to refrain from her daily activities and normal pursuits.

**WHEREFORE**, Plaintiff, **PATRICIA BRINSON**, demands judgment against Defendants, **CARLOS D. MELENDEZ** and **AIDA L. MELENDEZ** for:

A. General damages

B. Compensatory damages;

C. Cost and interest;

D. Attorneys fees;

E. Any other relief the Court deems just and equitable.

## THIRD COUNT

Plaintiff, **PATRICIA BRINSON**, repeats the allegations contained in the First Count and Second Counts as though more fully set forth at length.

1.      Defendants, Police Officers **A. STOKES**, Badge #10560, and **MALCOLM P. KIRKLAND**, #10538, are, and were, at all times relevant, police officers, employees, and agents of Defendant **CITY OF NEWARK**. They are sued in their individual and official capacities.

2.      On June 13, 2018, Defendants **STOKES** and **KIRKLAND** were on duty as police officers operating an unmarked patrol vehicle owned by Defendant, **CITY OF NEWARK.**

3.      While traveling on Springfield Avenue and South 16th Street in the City of Newark, Defendants **STOKES** and **KIRKLAND** allegedly observed a black Honda Acura operated by Defendant, **SHAKEERA WILLIAMS**, traveling westbound on Springfield Avenue, commit a potential summary traffic offense.

4.      Defendants **STOKES** and **KIRKLAND** had no knowledge of any actual or potential other illegal conduct committed by the driver of the black Honda Acura.

5.      Based solely upon their observation of this summary traffic offense, Defendants **STOKES** and **KIRKLAND** initiated a high speed pursuit of the black Honda Acura without activating the sirens on the unmarked police vehicle.

6.    Defendants **STOKES** and **KIRKLAND** had the opportunity to deliberate about their decision to engage in a high speed pursuit of the black Honda Acura.

7.    Thus, Defendants **STOKES** and **KIRKLAND** had no compelling justification for engaging in a high-speed pursuit with such an inherent risk of harm.

8.    Likewise, in the face of having the opportunity to deliberate about the risks of harm in pursuing a violator of a summary traffic offense, particularly at a high rate of speed, no good faith basis existed for the Defendants **STOKES** and **KIRKLAND** to engage in a high-speed pursuit and their conduct was objectively unreasonable.

9.    Thus, by willfully engaging in a high-speed pursuit of a summary traffic offense violator, after an opportunity to deliberate the inherent risk of harm to the public, Defendants, acted unreasonably and with deliberate indifference for the safety of the Plaintiff and other members of the traveling public.

10.   Defendants accelerated their police cruiser to a speed in excess of the speed limit in an effort to catch up to and apprehend the driver.

11.   Defendants continued the reckless high speed pursuit of the black Honda Acura traveling north on South 12th Street against traffic, through the intersection of South 12th Street and 18th Avenue, before making a left headed west bound on South 18th Avenue.

12.    Defendants continued the high speed pursuit of the vehicle to the intersection of 13th Street and 18th Avenue, continuing north on 13th Street until just prior to the collision between the black Honda Acura (vehicle #1), and the black GMC Yukon (vehicle #2), which caused the black Honda Accord to spin out of control and crash into Plaintiff, **PATRICIA BRINSON**, who was lawfully in the crosswalk. Vehicle #1 then struck at tree, a pole, a fire hydrant, and caused damaged to a fence located on South 13th Street.

13.    Upon arrival to the scene of the crash, **EMS** personnel found Plaintiff in acute distress. She was loaded in an ambulance and transported to University Hospital, in Newark, New Jersey, where she was diagnosed with multiple injuries, some of which required surgical intervention, including a left open tibular/fibular fracture and a segmental fibular fracture.

14.    Plaintiff was hospitalized for nine days and underwent inpatient as well as outpatient rehabilitation for almost a year in order to recover from the injuries she sustained in the crash.

15.    Prior to the subject crash, members of the public observed Defendants **STOKES** and **KIRKLAND** driving in a reckless and careless manner and at an extremely excessive rate of speed for no apparent reason at several locations in the City.

16.  Plaintiff, **PATRICIA BRINSON**, observed the high speed pursuit of vehicle #1 by **STOKES** and **KIRKLAND** which was terminated immediately after vehicle #1 crashed into Plaintiff.

17.  Defendants **STOKES** and **KIRKLAND**, operated, controlled, and maintained their vehicle in a willful, wanton, and reckless, by engaging in a high speed pursuit of vehicle #1, causing vehicle #1 to collide with vehicle #2 before it crashed into Plaintiff, **PATRICIA BRINSON**, who was lawfully in the crosswalk.

18.  Defendants **STOKES** and **KIRKLAND** operated said vehicle on said occasion in violation of N.J.S.A. 39:4-96; 39:4-97, and other motor vehicle laws of the State of New Jersey.

19.  The crash in question occurred as a direct, proximate result of the willful, wanton, and reckless conduct of Defendants **STOKES** and **KIRKLAND.**

20.  Defendant, **CITY OF NEWARK**, located at 480 Clinton Avenue, in the City of Newark, County of Essex, State of New Jersey, was the owner of the patrol car operated by Defendants **STOKES** and **KIRKLAND,** and gave permission and approval to said Defendants to operate its vehicle as its agent, servant and/or employee and is vicariously liable for their conduct.

21.  Defendant, **CITY OF NEWARK**, entrusted its vehicle to Defendants **STOKES and KIRKLAND** to be operated in a willful, wanton, and reckless manner while conducting a high speed pursuit of vehicle #1.

22.  A timely Notice of Claim was served upon Defendant, **CITY OF NEWARK.**

23.  As a direct and proximate result of the willful, wanton, and reckless conduct of the Defendants **A. STOKES, MALCOLM P. KIRKLAND,** and the **CITY OF NEWARK,** Plaintiff, **PATRICIA BRINSON,** suffered and sustained serious, severe, disabling and permanent injuries that required and still requires the care and treatment of physicians, hospitalization and medication, have and will in the future be caused to obtain medical treatment, and have will in the future be caused to refrain from her daily activities and normal pursuits.

WHEREFORE, Plaintiff demands judgment against Defendants **A. STOKES, MALCOLM P. KIRKLAND,** and the **CITY OF NEWARK** for:

A. General damages;

B. Compensatory damages;

C. Cost and interest;

D. Attorneys fees;

E. Any other relief the Court deems just and equitable.

## FOURTH COUNT
## VIOLATION OF CIVIL RIGHTS - 42 U.S.C. §1983

Plaintiff, **PATRICIA BRINSON,** repeats the allegations contained in the First, Second and Third Counts as though more fully set forth at length.

1.    Defendant, **CITY OF NEWARK**, is a municipality of the State of New Jersey, and owns, operates, manages, directs and controls the Newark Police Department, which employs Defendants **STOKES** and **KIRKLAND.**

2.    Defendants **STOKES** and **KIRKLAND** engaged in an unlawful high-speed pursuit of a summary offender thereby violating Plaintiff **PATRICIA BRINSON'S** rights under the laws of the Constitutions of the United States and New Jersey, in particular, the due process clause of the Fourteenth Amendment and her rights under 42 U.S.C. §1983.

3.    The acts committed by Defendants **STOKES** and **KIRKLAND** constitute willful acts committed with deliberate indifference and state created danger upon Plaintiff, **PATRICIA BRINSON,** which caused the previously described injuries.

4.    The actions of **STOKES** and **KIRKLAND** shocks the conscious, the harm caused to Plaintiff was foreseeable and direct, and Plaintiff was a foreseeable victim.

5.    **STOKES** and **KIRKLAND** actions were an affirmative use of their authority in a way that created a danger to citizens, including Plaintiff, that rendered her more vulnerable to danger than had **STOKES** and **KIRKLAND** not acted at all, all in violation of the Fourteen Amendment to the Constitutions of the United States and New Jersey, and 42 U.S.C. §1983.

6.    **STOKES** and **KIRKLAND** unnecessarily, willfully, and with deliberate indifference, created a dangerous situation, thereby directly causing serious injury to Plaintiff **PATRICIA BRINSON**, which is a violation of her rights under the laws and the Constitution of the United States and, in particular, the due process clause of the Fourteenth Amendment and 42 U.S.C. §1983.

7.    The wilful, wanton, and objectively unreasonable actions of **STOKES and KIRKLAND** were undertaken with a reckless disregard for the lives and safety of Plaintiff and with deliberate indifference to the rights of Plaintiff.

8.    The actions Defendants were undertaken deliberately, willfully, and recklessly, and with knowledge that there was a high degree of probability of harm and with reckless indifference to the consequences, including significant injury, which were likely and did occur to **PATRICIA BRINSON.**

9.    The actions of Defendants were undertaken deliberately, willfully, recklessly, and with the knowledge that they were violating all standard "police pursuit" procedures and policies in effect at that time, including the New Jersey Attorney General Pursuit Policy.

10.    Defendants acted deliberately, willfully, recklessly, and with deliberate indifference in unnecessarily and unreasonably creating the dangerous situation which led to **PATRICIA BRINSON**

being struck by vehicle #1 which was being pursued by the police vehicle.

11. Defendants **STOKES and KIRKLAND** knew or should have known that they were violating the constitutional rights of **PATRICIA BRINSON,** including her right to freedom from: state created danger; deliberate indifference to her safety; and violations of the right to life secured to **PATRICIA BRINSON** by the provisions of the United States Constitution, including the Fourteenth Amendment and by 42 U.S.C.§1983.

12. As a direct and proximate result of the aforesaid acts of **STOKES and KIRKLAND,** which were committed under color of their authority as **CITY OF NEWARK** police officers, Plaintiff, **PATRICIA BRINSON,** suffered grievous bodily injury which is a violation by said Defendants of the laws and the Constitutions of the United States and New Jersey, in particular, Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, all of which makes said Defendants liable to the Plaintiff.

**WHEREFORE,** Plaintiff **PATRICIA BRINSON,** demands judgment against **Defendants STOKES, KIRKLAND,** and the **CITY OF NEWARK,** individually and/or jointly and severally with the other Defendants, exclusive of interests and costs, which sum includes but is not limited to:

    A.   Compensatory Damages;

    B.   Reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988;

C.    Punitive damages;

D.    All other damages recoverable under 42 U.S.C. §1983; and

D.    Any other relief the Court deems just and equitable.

## FIFTH COUNT
## MONELL CLAIM (42 U.S.C. §1983)

Plaintiff, **PATRICIA BRINSON,** repeats the allegations contained in the First, Second, Third, and Fourth Counts as though more fully set forth at length.

1.    New Jersey's Vehicle Pursuit Policy has acknowledged, for decades, that most chases start with traffic violations; and for decades, the **CITY OF NEWARK** has known about the significant harms and dangers related to unauthorized vehicle pursuits initiated by its police department.

2.    The **CITY OF NEWARK** police officers have a long, systemic, and documented history of aggressive police practices including engaging in unauthorized and dangerous high speed vehicle pursuits, ending in vehicle crashes causing injuries and deaths.

3.    Through its police department, the **CITY OF NEWARK,** adopted, sanctioned, and furthered a de facto policy or custom of permitting its officers to engage in unauthorized and dangerous vehicle pursuits for minor traffic offenses by: (1) ignoring vehicle pursuits restrictions, (2) forgoing supervisory oversight of vehicle pursuits, and (3) relaxing or waiving  departmental

training and reporting for vehicle pursuits, which resulted in the violation of citizens' constitutional rights, including Plaintiff.

4.  As recently as 2014, the **CITY OF NEWARK** police department's status quo of ignoring policing standards, forgoing officer supervision, and waiving departmental training was documented and exemplified by the July 22, 2014, United States Department of Justice - Civil Rights Division - Investigation of the Newark Police Department (the "Investigation"), which concluded that **inadequate policing policies, supervision, and training in the Newark Police Department had "contributed to a pattern of constitutional violations."**

5.  The Justice Department found that when Newark police officers engaged in aggressive policing that violates the constitutional rights of its citizens, the higher ups within the Newark Police Department do not require supervisors to respond in an appropriate manner to enable immediate initial assessment of the incident.

6.  The Justice Department also found that although supervisors are required to approve incident reports, such as the kind generated by police officers who engage in high speed pursuits, the supervisors merely confirm that the reports were completed, and not whether policing policies or procedures were followed.

7.    In addition, the Justice Department found similar concerns with respect to the Newark Police Department's stops and arrests, with nearly three quarters of documented stops lacking an articulation of reasonable suspicion leading the Investigation to highlight that it was clear that supervisors were not reviewing and holding officers accountable for their actions.

8.    In summary, the Justice Department found that the **CITY OF NEWARK'S** Police Department had not provided officers with the tools necessary to support constitutional policing, such as adequate training, clear and easily accessible policies, and meaningful supervisory direction.

9.    The Investigation concluded that the cumulative effect of deficiencies created a Police Department that was prone to shield officers from accountability, and insufficiently focused on protecting the constitutional rights of its citizens and the public.

10.   The **CITY OF NEWARK**, through its Internal Affairs Department, has engaged in a past practice and policy of exhibiting deliberate indifference to complaints of constitutional violations against its police officers from citizens like **PATRICIA BRINSON**, against police officers who were employed by or act as agents of the **CITY OF NEWARK** for which the **CITY** has been placed on notice.

11.  The **CITY OF NEWARK'S** Internal Affairs department is a complete sham, and its long standing systematic, pervasive actual and/or de facto policies and practices creates an environment wherein officers are comfortable in knowing they can act unlawfully without any repercussions or discipline. Such past policy and practice are directly linked to the violation of the constitutional rights of **PATRICIA BRINSON** because such past policy and practice encourage violations by police officers, such as **STOKES** and **KIRKLAND.**

1.  The **CITY OF NEWARK** engaged in a policy, custom and practice of inadequate screening, hiring, retaining, investigating, disciplining, training and supervising its employees.

2.  The unlawful high speed pursuit that resulted in the violation of **MS. BRINSON'S** constitutional rights and the subsequent cover up of the incident by the **CITY** and its Police Department, was not an isolated or aberrational incident. It was the direct result of systemic deficiencies in the training, supervision and discipline of the **CITY'**S Police Officers, including **Defendants STOKES** and **KIRKLAND,** that began long before the violation of **MS. BRINSON'S** constitutional rights and continues to this day.

3.  In the past ten years, the **CITY OF NEWARK'**S de facto policy and  custom of allowing its officers to engage in unlawful and unauthorized high speed vehicle pursuits for minor traffic violations has been documented and has repeatedly resulted in death

or serious injuries and the violation of its citizens and the motoring public's constitutional civil rights.

4.    A February 2020 Asbury Park Press Investigation of Police Pursuits, found that federal crash data from the last decade revealed that **CITY OF NEWARK** police car chases killed residents at a higher rate than any other city in the country.[1]

5.    Setting aside the numerous injuries caused the **CITY OF NEWARK** police chases, the federal data shows that **thirteen** people were killed in the **CITY OF NEWARK** in the past ten years as a result of police pursuits: nine were not in the car police were chasing; one was a three-year-old boy.[2]

6.    For example, after spotting James Sterling "driving erratically," Newark police officers engaged in a vehicular pursuit which ended when Sterling's SUV struck an ambulance and set off a multi-vehicle crash on South Orange Avenue and South 9th Street in Newark on November 19, 2012. The crash killed an emergency medical technician and a patient.

7.    A Newark police car was pursuing a vehicle, on August 27, 2015, when the suspect's car crashed and struck a 79-year-old woman walking her dog on Clifton Avenue near Branch Brook Park, causing

---

[1] Asbury Park Press analysis of New Jersey Police Data, https://www.app.com/in-depth/news/investigations/2019/12/29/deadly-police-chases-kill-dozens-nj-catch-few-fleeing-crooks/2506355001/

[2] Id.

serious injuries. A total of three officers, operating two Newark police department cruisers, participated in the chase.

8.    On September 11, 2015, a Newark police car chase tragically ended after police spotted Troy Ruff in his Hyundai Sonata at approximately 7:40 a.m. and tried to pull him over after they recognized him. The officers engaged in a high speed pursuit of Ruff's vehicle. Ruff eventually crashed his car and drove onto a curb, striking 3-year-old Rahmere Tullis who was on the sidewalk with his mother. Tullis was pronounced dead at the scene.

9.    A Newark police department high speed vehicle pursuit ended in the death of an innocent 29 year-old pedestrian mother as she crossed the street on 14th Avenue in the path of a chain reaction crash at the end of the pursuit on May 6, 2018. Priscilla Godoy, an EMT with the West Essex First Aid Squad, was crushed to death between two vehicles.

10.    A police chase, starting in Hillside, NJ, by the Hillside police department, crossed into the jurisdiction of the City of Newark, where the Newark police department joined the chase which ended in a violent crash and death of an innocent veteran New Jersey corrections officer on August 24, 2019. The vehicle being pursued by Hillside and Newark police, slammed into Officer Omar Martin's Ford Mustang near the intersection of Bragaw Avenue and Aldine Street in Newark around 2:37 a.m., sending it careening into a utility pole.

11.     But despite the **CITY OF NEWARK'S** longstanding awareness of that the harms and dangers, presented by police pursuits, far outweigh the payoff on engaging in chases, the **CITY OF NEWARK** police department operated under its own de facto policy or custom permitting its police officers to engage in dangerous and unauthorized police chases, causing as a result of deliberate indifference, negligence, and recklessness in the training, hiring, and supervision of police personnel.

12.     The **CITY OF NEWARK'S** failure implement adequate training and supervision is also illustrated in years of records, or a lack thereof, of which it and the Essex county prosecutor's office has exclusive access and control, including (1) bi-annual training reports on vehicular pursuit in-service training,(2) annual reports confirming in-service pursuit training of all police, (3) policies regarding the required formal review of all police pursuits, (4) annual reports summarizing policy required details of all police pursuits including, but not limited to the number of pursuits; pursuits resulting in crashes, injury, death and arrests; the number and type of vehicles involved, etc; (5) officer filed Pursuit Incident Reports which include speeds of pursuits, reasons for initiating pursuits, consequences of pursuits, whether the violator was apprehended, and the offense charged to the violator, (6) Vehicle Pursuit Logbook, and (7) required video surveillance of the police pursuits.

13.    Accordingly, the **CITY OF NEWARK**, through its duly authorized agents, servants, workers, employees and/or representatives, failed to (1) communicate and publish official vehicle pursuit policies and directives to its police officers; (2) properly train its police officers in official vehicle pursuit policies and directives; (3) enforce compliance with official vehicle pursuit policies the conduct of such pursuits; and (4) supervise its police officers in the implementation and execution of official vehicle pursuit policies and directives.

14.    Defendants Chief **DARNELL HENRY, SAMUEL DeMAIO**, and **JOHN DOES 1-10**, are the chief executive officers of the **CITY OF NEWARK'S** Police Department and, therefore, is charged with establishing all policies for its Police Department, either express or de facto.

15.    Defendants **HENRY, DEMAIO**, and **JOHN DOES 1-10**, were, at all relevant times, supervisory personnel for the **CITY OF NEWARK'S** Police Department, with oversight responsibility for its police officers, including Defendants **STOKES, KIRKLAND**, and **JOHN DOES 1-100**. They were responsible for the hiring and firing, instruction, supervision, correction and discipline, and training of all officers, including the named Defendants, on all aspects of law enforcement procedures, including the use of force, arrest procedures, pursuit, conducting traffic stops, and proper investigative techniques.

16. Defendants **HENRY**, **DeMAIO** and **JOHN DOES 1-20**, as supervisory personnel, owed a duty of care to **PATRICIA BRINSON** to prevent the unlawful conduct alleged, which foreseeably caused her severe personal injuries.

17. Based on prior conduct and complaints against Defendants **STOKES, KIRKLAND,** and **JOHN DOES 1-20,** Defendants **HENRY, DeMAIO,** and **JOHN DOES 1-20** knew, or in the exercise of due diligence should have known that if they failed to properly supervise and discipline Defendants, the inappropriate, unlawful and tortuous conduct of Defendants against **PATRICIA BRINSON** was likely to occur.

18. Defendants **HENRY, DeMAIO,** and **JOHN DOES 1-20** failed to take preventive and remedial measures to guard against the constitutional violations committed by Defendants **STOKES, KIRKLAND,** and **JOHN DOES 1-20.** Had they taken the appropriate action, **MS. BRINSON'S** constitutional rights would not have been violated.

19. Defendants **HENRY, DeMAIO** and **JOHN DOES 1-20'** failure to supervise and discipline Defendants **STOKES, KIRKLAND,** and **JOHN DOES 1-20,** amounted to negligence, gross negligence, deliberate indifference, or reckless misconduct, which directly caused, and was the moving force behind the constitutional deprivations **MS. BRINSON** suffered.

20. The conduct of the **CITY OF NEWARK,** the through duly authorized agents, servants, workers, employees and/or representatives, was negligent, deliberately indifferent,

recklessness, wanton, unlawful, and unconstitutional conduct; and committed without due regard for the rights, health, safety and welfare of **PATRICIA BRINSON**.

21.   The **CITY OF NEWARK'S** actions and inactions were the moving force behind the actions of **STOKES, KIRKLAND,** and **JOHN DOES 1-10,** which led to the constitutional violation suffered by **PATRICIA BRINSON**, as specified above.

22.   As a direct and proximate result of the actions and inactions of the **CITY OF NEWARK,** and its duly authorized agents, servants, workers, employees or representatives, **PATRICIA BRINSON** suffered personal injuries, pain and suffering, disability, lost of enjoyment of life; and violations of her constitutional rights.

**WHEREFORE,** Plaintiff demands judgment against the **CITY OF NEWARK,** individually and/or jointly and severally with the other defendants, exclusive of interests and costs, which sum includes but is not limited to:

A.   Compensatory Damages;

B.   Reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988;

C.   Punitive damages;

D.   All other damages recoverable under 42 U.S.C. §1983; and

D.   Any other relief the Court deems just and equitable. a compensatory damage award.

## SIXTH COUNT

Plaintiff, **PATRICIA BRINSON**, repeats the allegations contained in the First Count, Second Count, Third Count, Fourth, and Fifth Counts, as though more fully set forth at length.

1.   At the time of this crash, Defendant, **SHAKEERA WILLIAMS**, was operating a 2003 Honda Accord, NJ License Plate No. C36JSD, owned by Defendant, **YASIR W. HARRISON**, which was uninsured.

2. Plaintiff, **PATRICIA BRINSON**, was a pedestrian that was struck by the uninsured vehicle owned by Defendant **YASIR W. HARRISON** and operated by Defendant **SHAKEERA WILLIAMS.** Plaintiff is uninsured.

3.   By virtue of being uninsured, Plaintiff is entitled to coverage through **NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION ("PLIGA"),** which provides for payment of Personal Injury Protection (PIP) Benefits and payment for bodily injuries.

4.   Demand has been made of Defendant, **PLIGA** for payment of Plaintiff's medical expenses and bodily injuries.

5.   In direct breach of its statutory obligations, Defendant, **PLIGA,** has failed to provide PIP coverage to Plaintiff, has failed to pay Plaintiff's continuing medical expenses, and has failed to provide payment for Plaintiff's bodily injuries.

WHEREFORE, Plaintiff **PATRICIA BRINSON,** demand judgment against Defendant **PLIGA** for:

A. General damages;

B. Compensatory damages;

C. Cost and interest;

D. Personal Injury Protection (PIP) Benefits;

E. Attorneys fees;

F. Any other relief the Court deems just and equitable.

<u>**SIXTH COUNT**</u>

Plaintiff, **PATRICIA BRINSON,** repeats the allegations contained in the First Count, Second Count, Third Count, Fourth Count, and Fifth Counts as though more fully set forth at length.

1.    At all times hereinafter mentioned, Defendants **JOHN/JANE DOE 1-10, ABC CORPORATION** and **XYZ PARTNERSHIP 1-10,** representing one or more fictitious individuals or entities, consisting of Directors, Officers, Principals, Partners, Boards, Board Members or Representatives or Agents, individually, jointly and severally, caused to be owned, operated, controlled, maintained and/or serviced a vehicle in a careless, reckless, intentional and wanton manner, which caused the motor vehicle crash which is the subject of this lawsuit.

2.    At all times hereinafter mentioned, Defendants **JOHN/JANE DOE 1-10,** was acting as an agent, servant and/or employee of Defendants, **CITY OF NEWARK, ABC CORPORATION** and **XYZ PARTNERSHIP 1-10,** individually, jointly, and severally.

3.    As a result of the negligent, reckless, careless, wanton, and intentional ownership, operation, control and use of the vehicle of Defendants **JOHN/JANE DOE 1-10**, **ABC CORPORATION** and **XYZ PARTNERSHIP 1-10**, representing one or more fictitious individuals or entities, individually, jointly and severally, Plaintiff, **PATRICIA BRINSON**, was caused to suffer and sustain severe, disabling and permanent injuries, and have and will in the future be caused to obtain medical treatment, has been and will in the future be caused to refrain from her normal pursuits.

WHEREFORE, Plaintiff **PATRICIA BRINSON**, demands judgment against Defendants **JOHN/JANE DOE 1-10**, **ABC CORPORATION** and **XYZ PARTNERSHIP 1-10**, individually, jointly and severally, for:

    A.    General damages;

    B.    Compensatory damages;

    C.    Cost and interest;

    D.    Attorneys fees;

    E.    Any other relief the Court deems just and equitable.

## CERTIFICATION

PLEASE TAKE NOTICE pursuant to the provisions of R.4:5-1, the undersigned attorney certifies that this matter is not the subject of any other action pending in any court or arbitration proceeding nor is any other action or arbitration proceeding contemplated, and all known necessary parties have been joined in this action.

Page 27 of  30

## NOTICE PURSUANT TO RULES 1:5-1 (A) AND 4:17

PLEASE TAKE NOTICE take notice that the undersigned attorney, counsel for the Plaintiff, hereby demands pursuant to Rules 1:5-1 (a) and 4:17 (c), that each party herein serving pleadings and interrogatories and receiving answers thereto, serves copies of all such pleadings and answered interrogatories received from any party, including any documents, papers and other materials referred to therein, upon the undersigned attorney, and take notice that this is a continuing demand.

## DEMAND FOR ANSWERS TO INTERROGATORIES

PLEASE TAKE NOTICE pursuant to R.4:17-1 (b), Plaintiff hereby demands that Defendants provide answers to the uniform interrogatories set forth in Form C and Form C(1) of Appendix II of the Rules Governing the Courts of the State of New Jersey.

## DEMAND FOR ANSWERS TO SUPPLEMENTAL INTERROGATORIES

PLEASE TAKE NOTICE pursuant to R.4:17, Plaintiff hereby demands that Defendants provide answers to the supplemental interrogatories attached herein.

## DEMAND TO ANSWER NOTICE TO PRODUCE

PLEASE TAKE NOTICE pursuant to R.4:18-1, Plaintiff hereby requests that Defendants respond to the Notice to Produce attached herein within the time prescribed by the Court Rules.

## REQUEST FOR DISCOVERY OF INSURANCE

PLEASE TAKE NOTICE pursuant to R.4:10-2(b) demand is hereby made that Defendants respond to the Request for Discovery of Insurance attached herein.

## CERTIFICATION PURSUANT TO AUTOMOBILE INSURANCE COSTS REDUCTION ACT OF 1998

PLEASE TAKE NOTICE this action is filed pursuant to the requirements of the Automobile Insurance Costs Reduction Act of 1998.

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that attorney, TRACEY C. HINSON, ESQUIRE, is designated as trial counsel in the above captioned litigation for the firm of HINSON SNIPES, LLP.

## JURY DEMAND

PLEASE TAKE NOTICE that Plaintiff hereby demands a trial by jury as to all issues so triable.

## NOTICE PURSUANT TO RULES 1:7-1(b)

PLEASE TAKE NOTICE that Plaintiff intends to utilize the time-unit basis for calculating unliquidated damages in Plaintiff's closing statement to the jury and the Court.

**HINSON SNIPES, LLP**

Attorneys for Plaintiff

By:  /s/Tracey C. Hinson
Dated: 11/25/20       Tracey C. Hinson, Esquire