| | |
|---|---|
| PATRICIA BRINSON,<br><br>          Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, *et al.*<br><br>          Defendants. | Civ. No. 20-9606 (KM)(JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

      This action arises from a vehicle chase in which Newark Police Officers A. Stokes and Malcolm Kirkland (collectively "Officer Defendants") attempted to apprehend driver Shakeera Williams. As alleged, Ms. Williams was evading police when she collided with another car, operated by Carlos Melendez, and struck a pedestrian, Patricia Brinson, plaintiff in this matter.

      Ms. Brinson initiated an action in New Jersey Superior Court, Essex County (Docket No. EXS-L-4002-20) against the City of Newark ("Newark" or the "City"), driver Shakeera Williams, Yasir Harrison (owner of the vehicle Ms. Williams was operating), Carlos Melendez, Aida Melendez (owner of the vehicle Mr. Melendez was operating), Police Officer A. Stokes, Police Officer Malcom Kirkland, and New Jersey Property-Liability Insurance Guaranty Association ("PLIGA"). (DE 1 at 2.) [1] On July 29, 2020, the City removed the matter to the

---

[1]     Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

      "DE" = Docket entry number in this case.

      "1AC" = Plaintiff's First Amended Complaint (DE 22)

      "Kirkland Cert." = Certification of Officer Malcolm Kirkland (DE 25-2)

      "Incident Report" = Incident Report prepared by Officer Kirkland (DE 25-3)

1

United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1441 and 1446(a). (*Id.*) Defendants Carlos Melendez and Aida Melendez consented to removal. (*Id.* at 3.) PLIGA later consented to removal as well.

Thereafter, Newark filed a motion (DE 5) to dismiss plaintiff's Complaint as against itself only, for failure to state a claim. On October 26, 2020, the Court filed an Opinion (DE 19) and Order (DE 20) granting the City's motion without prejudice to a motion to amend.[2]

---

"Google Maps Doc." = Google Maps depiction of the route of the vehicle case (DE 25-5)

"JOC" = Judgement of Conviction of Shakeera Williams (DE 25-6)

"Plea" = Transcript of Shakeera Williams's Guilty Plea (DE 25-7)

"SUMF" = Statement of Undisputed Material Facts in Support of Officer Defendants' Motion for Summary Judgment (DE 25-8)

"Audio Rec." = Audio Recording of Police Dispatch on June 13, 2018

"AG Pursuit Policy" = the New Jersey Police Vehicular Pursuit Police issued by the State of New Jersey's Office of the Attorney General (DE 36-1)

"NPD Pursuit Policy" = the Newark Police Department's General Order: 94-03 (Revised) Vehicle Pursuit Policy (DE 36-2)

"MSJ Brief" = Brief in Support of Officer Defendants' Motion for Summary Judgment (DE 25-9)

"MSJ Opp." = Plaintiff's Opposition to Officer Defendants' Motion for Summary Judgment (DE 36)

"MSJ Reply" = Reply Brief in support of Officer Defendants' Motion for Summary Judgment (DE 43)

"MTD Brief" = Brief in Support of the City of Newark's Motion to Dismiss (DE 26-3)

"MTD Opp." = Plaintiff's Opposition to the City of Newark's Motion to Dismiss (DE 34)

"MTD Reply" = Reply Brief in Further Support of the City of Newark's Motion to Dismiss (DE 42)

[2] Certain matters were dismissed on consent, including Ms. Brinson's tort claims against the City and her claims for punitive damages and vicarious liability. (DE 19 at 3-5.) I also dismissed Ms. Brinson's claims against the City under 42 U.S.C. § 1983 because the Complaint failed to plead facts with the required specificity. (DE 19 at 10.)

One month later, on November 26, 2020, Ms. Brinson filed a First Amended Complaint (DE 22) against the previously-named defendants, and added as defendants Darnell Henry, retired Police Chief, and Samuel Demaio, former Police Director.

Defendant PLIGA filed an Answer (DE 24) to the First Amended Complaint with affirmative defenses and crossclaims against its co-defendants.

Before the Court is the Officer Defendants' joint motion (DE 25) for summary judgment dismissing the action as against them under Federal Rule of Civil Procedure 56. Also before the Court is Newark's motion (DE 26) to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and to stay discovery.[3] The Officer Defendants join in the City's arguments as well. (MSJ Brief at 7.)

For the reasons provided herein, I will (1) deny the Officer Defendants' motion (DE 25), (2) grant the City's motion (DE 26) to with respect to all punitive damages claims against it and with respect to the claims against former Director Demaio and retired Chief Henry; and (3) deny the City's motion in all other respects.

## I. Summary

### a. Factual Allegations in the First Amended Complaint

On June 13, 2018, Officers Stokes and Kirkland, while on duty and operating an unmarked patrol vehicle, observed Ms. Williams commit a traffic offense while she was traveling westbound on Springfield Avenue in Newark. (1AC Third Count ¶¶2-3.) The First Amended Complaint alleges that, though the officers "had no knowledge of any actual or potential other illegal conduct," they initiated a high speed chase of Ms. Williams's vehicle, a 2003 black Honda Acura, without activating their sirens. (*Id.* at ¶¶4-5.) The officers then chased Williams's vehicle "through the intersection of South 12th Street and 18th

---

[3] As a result of retirements, there have been substitutions of parties in their official capacities. (*See infra.*) The current Acting Public Safety Director Acting Chief of Police Lee Douglas join in the City's arguments.

3

Avenue, before making a left headed west bound on South 18th Avenue." (*Id.* at ¶11.) During the chase, Ms. Williams's vehicle collided with Mr. Melendez's vehicle, a black 1999 GMC Yukon, which was traveling west on 16th Avenue, towards the intersection of 16th Avenue and 13th Street (1AC Second Count ¶1; 1AC Third Count ¶12.) Williams's vehicle then spun out of control and crashed into Ms. Brinson, a pedestrian who was traveling west in the crosswalk at the intersection of 16th Avenue and 13th Street. (1AC First Count ¶1; 1AC Third Count ¶12.)

Ms. Brinson was transported via ambulance to University Hospital in Newark, where she was diagnosed with multiple injuries, some requiring surgical intervention. (1AC Third Count ¶13.) She was hospitalized for nine days and underwent inpatient and outpatient rehabilitation for almost a year. (*Id.* at ¶14.)

The First Amended Complaint asserts seven claims:[4]

**Count One** – State-law tort claims against Ms. Williams and Mr. Harrison;

**Count Two** – State-law tort claims against Mr. Melendez, and Ms. Melendez;

**Count Three** – State-law tort claims against the Officer Defendants, and against the City on a theory of vicarious liability;

**Count Four** – Violations of Civil Rights pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Officer Defendants ("State-Created Danger Claim") and against the City;

**Count Five** – Violations of Section 1983 and 42 U.S.C. § 1988 ("Section 1988") against the City ("*Monell* Claim");

**Count Six** – Breach of statutory obligations to provide payment of Personal Injury Protection Benefits and payment for bodily injury against PLIGA;

---

[4] The "Sixth Count" is listed twice. (*See* 1AC at p. 25-26.) I will refer to the latter claim as Count Seven.

**Count Seven** – State law tort claims against unknown and unnamed defendants John/Jane Doe 1-10, ABC Corporation and XYZ Partnership 1-10.

### b. Pending Motions

The Officer Defendants filed a motion (DE 25) for summary judgment, in lieu of an answer, to dismiss the matter against them with prejudice pursuant to Federal Rule of Civil Procedure 56. The City filed a motion (DE 26) to dismiss the First Amended Complaint as against itself, Public Safety Director Ambrose, and Retired Police Director Demaio, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The City also moves to stay discovery.

## II. Officer Defendants' Motion for Summary Judgment

### a. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting Anderson, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F. 3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). In that respect, the Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

    **b. Officer Defendants' Statement of Undisputed Material Facts and Evidentiary Submissions**

Officers Stokes and Kirkland submit that, on June 13, 2018, at approximately 9:30 PM, they were operating an unmarked patrol car at the intersection of Springfield Avenue and South 11th Street when they "observed a vehicle disregard a traffic signal while traveling westbound" through the same intersection. (SUMF ¶¶1-2; Kirkland Cert. ¶5; Incident Report at 2-3.) The Officer Defendants submit that they "activated their lights and sirens and began to close the gap on the vehicle to conduct a traffic stop of the suspect." (SUMF ¶3; Kirkland Cert. ¶5; Incident Report at 2.)

About twenty feet later, the suspect, later identified as Ms. Williams, "made a right turn on South 12th Street traveling northbound against the flow of traffic." (SUMF ¶4; Kirkland Cert. ¶¶5,7; Incident Report at 3; Google Maps Doc. at 1.) Ms. Williams then traveled approximately 400 feet, arrived at the intersection of South 12th Street and 18th Avenue, and then made a left onto 18th Avenue. (SUMF ¶6; Kirkland Cert. ¶¶5,7; Incident Report at 3; Google Maps Doc. at 1.) The Officer Defendants submit that, as Ms. Williams approached the intersection, she "began driving in a reckless manner and started to accelerate." (SUMF ¶7; Kirkland Cert. ¶7; Incident Report at 3; *see also* 1AC Third Count ¶11.) At that point, Officers Stokes and Kirkland recognized that Ms. Williams was fleeing. They "deactivated their lights and sirens and terminated the pursuit as [Ms.] Williams turned right (northbound) onto 13th Street." (SUMF ¶9; Kirkland Cert. ¶¶ 5, 7-8; Incident Report at 3.)

The Officer Defendants further submit that "[a]t the time they radioed in their patrol number, [their] emergency sirens could be heard on the dispatch." (SUMF ¶¶10-11; Kirkland Cert. ¶8; Audio Rec. 9:36:26.) Fourteen seconds later, the police sirens can no longer be heard, as the officers "advised dispatch of the license plate and direction of flight of [Ms. Williams], and requested back up." (SUMF ¶12; Kirkland Cert. ¶8; Audio Rec. 9:36:40.) Around 9:37 PM, the officers informed dispatch that they lost sight of the vehicle while they were turning onto 13th Street. (SUMF ¶13; Kirkland Cert. ¶8; Audio Rec. 9:37:32.) Seconds later, the officers arrived at the scene of the accident in question. (SUMF ¶¶ 13-5; Kirkland Cert. ¶8; Audio Rec. 9:38:00.)

The Officer Defendants submit that the distance from where they first observed Ms. Williams' traffic violation to the place where they lost sight of her vehicle at 13th Street and 18th Avenue is .2 miles. (SUMF ¶16; Kirkland Cert. ¶7; Google Maps Doc. at 1-2.) The distance from the intersection of 13th Street and 18th Avenue to the site of the accident is .3 miles. (SUMF ¶17; Kirkland Cert. ¶7; Google Maps Doc. at 1-2.) Overall, the entire route traveled by Ms. Williams from the time officers attempted to stop the vehicle to the scene of the

accident is a half mile. (SUMF ¶18; Kirkland Cert. ¶7; Google Maps Doc. at 1-2.)

Ms. Williams was later charged with failure to observe a traffic signal, reckless driving, driving with a suspended license, careless driving resulting in property damage, driving under the influence of liquor or drugs, operating a vehicle in possession of a controlled dangerous substance, and child endangerment. (SUMF ¶23; Kirkland. Cert. ¶5; Incident Report at 3.) Ms. Williams subsequently pleaded guilty to resisting arrest by eluding after instruction to stop and aggravated assault by attempting to cause significant bodily injury. (SUMF ¶25; Kirkland Cert. ¶¶9-10; JOC at 2; Plea at 4, 7-9.) At the plea hearing, Ms. Williams admitted that the officers attempted to pull her vehicle over with their lights and sirens activated, and that she fled in response. (SUMF ¶26; Kirkland Cert. ¶10; Plea at 7.)

Ms. Brinson admits that the Officer Defendants were on duty on June 13, 2018, and that they were traveling in an unmarked vehicle on Springfield Avenue towards the intersection of South 11th Street. (OSUMF ¶1.) She further admits that the Officer Defendants observed the driver of a black Acura commit a "summary traffic offense," (*Id.* at ¶2) and that the driver of that vehicle was later identified as Shakeera Williams (*Id.* at ¶20). However, Ms. Brinson denies all other statements. She stresses in addition that the Officer Defendants have not filed an answer to the Amended Complaint, and that depositions and documentary discovery have not yet been conducted. (OSUMF ¶1-3.) Additionally, Ms. Brinson states that the officers' evidentiary submissions, including the audio recording and documents related to Ms. Williams's criminal proceedings, were not previously produced to her, but were referenced for the first time in support of the Officer Defendants' summary judgment motion. (*Id.*)

### c. Analysis

I agree that this summary judgment motion, filed in advance of discovery, is premature.

Now it is true, of course, that Ms. Brinson has the burden to produce evidence in opposition to a properly supported motion for summary judgment:

8

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The entire structure of Rule 56, however, presumes that the parties have had a fair opportunity to compile a record and marshal the necessary facts. Where a party opposing a summary judgment motion believes more discovery is needed, Rule 56(d) supplies the correct procedure:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)** defer considering the motion or deny it;
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or
> **(3)** issue any other appropriate order.

Fed. R. Civ. P. 56(d). "The affidavit or declaration must address the following factors: '(1) what particular information is sought; (2) how, if uncovered, it would preclude summary judgment; and (3) why it has not previously been obtained.'" *Ensey v. Gov't Emps. Ins. Co.,* 92 F. Supp. 3d 253, 258 (D.N.J. 2015), *aff'd,* 663 F. App'x 172 (3d Cir. 2016) (quoting *Speth v. Goode,* No. 95–0264, 2012 WL 3277105, at *6 (D.N.J. Aug. 9, 2012)).

Counsel for Ms. Brinson has not followed that procedure to the letter. Still, her contention that the summary judgment motion is premature is more than plausible at this very early stage. She notes that discovery has not so much as begun. (MSJ Opp. at 14.) She cites critical missing information, such as "dispatch records, master recordings and audio transmissions relative to the

9

pursuit, CAD reports, 911 calls, internal investigations and reports, dash cam and body cam videos, Defendants' rate of speed, whether Defendants received authorization to engage in the pursuit, and whether they were advised to terminate the pursuit." (*Id.* at 15.) And of course there have been no depositions of the participants. The relevance of such evidence and the reason it has not yet been obtained are obvious.

The Officer Defendants have attempted to skip the filing of an answer or motion to dismiss, and jump directly to summary judgment. I do not suggest bad faith. The Officers have, for example, voluntarily produced the Incident Report and Officer Log, as well as an audio recording of their communications with dispatch, and this evidence is surely relevant.[5] Still, a pre-answer grant of summary judgment where the issues are factual, not legal, would be out of the ordinary. I will not lightly deny an injured plaintiff her right to probe the facts based on depositions and other discovery, as opposed to a summary judgment record curated by her adversary.

I do not prejudge the issues. I am not satisfied, however, that I possess an adequate record, and therefore will deny the summary judgment motion.[6]

---

[5] Judicial notice may also supply such basic facts as the length and layout of public streets where the chase occurred, or Ms. Williams's guilty plea to criminal charges.

[6] For the guidance of the parties, however, I will state some relevant legal principles.

*First,* as to individual officers, a possible vehicle for a summary judgment motion that comes early—but not *this* early—might be qualified immunity. "The doctrine of qualified immunity insulates government officials who are performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *James v. City of Wilkes-Barre,* 700 F.3d 675, 679 (3d Cir. 2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). Application of the immunity depends on (1) whether the facts put forward by the plaintiff show a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Id.*; *James,* 700 F.3d at 679.

While it is preferable that qualified immunity be addressed early, some factual development may nevertheless be required. I am confident that the parties, guided by

the Magistrate Judge, can identify and target the documents and depositions necessary to a resolution of the case.

*Second,* the elements of a state-created danger claim (Count 4) are as follows:

(1) [t]he harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sauers v. Borough of Nesquehoning,* 905 F.3d 711, 717 (3d Cir. 2018) (alterations in original) (quoting *Haberle v. Troxell,* 885 F.3d 170, 176-77 (3d Cir. 2018)). The U.S. Supreme Court has elaborated in *County of Sacramento v. Lewis,* 523 U.S. 833 (1998), which is discussed in *Sauers.* The issue may boil down to whether the officers were called upon to make split-second decisions, in which case an intent-to-harm standard applies, or whether there was time to deliberate, in which case a conscious-disregard standard may apply. This issue, among others, will depend on an analysis of the facts.

*Third,* the state law tort claim (Count 3) may turn on the presence, or not, of immunity under the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1, *et seq.* In particular, see N.J.S.A. 59:5-2(b), which applies to police pursuit:

Neither a public entity nor a public employee is liable for: . . .

b. any injury caused by:

(1) an escaping or escaped prisoner;

(2) an escaping or escaped person;

(3) a person resisting arrest or evading arrest;

. . . or

c. any injury resulting from or caused by a law enforcement officer's pursuit of a person.

*See also Tice v. Cramer,* 627 A.2d 1090, 1092 (1993).

One issue requiring factual exploration may be the exception from immunity in the case of "willful misconduct." N.J.S.A. 59:3-14(a); *see also Alston v. City of Camden,* 773 A.2d 693, 702 (N.J. 2001). In the context of police vehicle pursuits, willful misconduct "has two elements: 1) disobeying either a specific lawful command of a superior or a specific lawful standing order and 2) knowing of the command or standing order, knowing that it is being violated and intending to violate it." *Id.* (internal quotations omitted). Here, the rate of speed, the officers' adherence to vehicle pursuit guidelines, the point at which they abandoned the chase, and other facts will go into the court's determination.

### III. The City's Motion to Dismiss
#### a. Legal Standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

#### b. Punitive Damages and Vicarious Liability against the City

The City submits that Ms. Brinson is not entitled to punitive damages as a matter of law, and that it cannot be held vicariously liable under any of her claims. (MTD Brief at 17.)

Ms. Brinson does not respond to the punitive damages point. (*See generally* Opp. Brief.) She conceded in response to the City's first motion to dismiss that the City cannot be compelled to pay punitive damages. (DE 14 at

7.) Therefore, all punitive damages claims against the City are dismissed as a matter of law, with prejudice.

The vicarious liability claim against the City, as to the Section 1983 claim, is asserted as a *Monell* claim in Count Five.[7] (1AC Count 5 ¶¶ 1-22.) *Monell* liability requires that the plaintiff "(i) demonstrate the existence of an unlawful policy or custom; (ii) that resulted in a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation." *Maldonado v. City of Passaic Bd. of Educ.*, No. 17-12245, 2020 WL 289649, at *7 (D.N.J. Jan. 21, 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)); *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir.), cert. denied, 140 S. Ct. 82, 97 (2019) (citing *Monell v. New York City Dept. of Soc. Servs*, 436 U.S. 658, 694 (1978)).

> [1] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted).
>
> [2] "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (Becker, J.); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) ("A custom … must have the force of law by virtue of the persistent practices of state [or municipal] officials." (internal quotation marks omitted)).

*Estate of Roman*, 914 F.3d at 798.

The complaint does allege the existence of such a policy or custom.[8] I will deny the motion to dismiss because such facts are largely within the control of the City, and may be explored in discovery as appropriate.

---

[7] *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978))

[8] The First Amended Complaint asserts that the City furthered such *de facto* policy or custom by: "(1) ignoring vehicle pursuits restrictions, (2) forgoing supervisory oversight of vehicle pursuits, and (3) relaxing or waiving departmental training and

In addition, it is axiomatic that for *Monell* liability to attach to a municipality, there must be an underlying constitutional violation. *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). Thus, the Magistrate Judge may opt to prioritize discovery as to the underlying violation, proceeding to the *Monell* issues as necessary.

### c. Claims Against Former Director Demaio and Retired Police Chief Henry

Finally, the First Amended Complaint asserts claims against former Director Samuel Demaio and retired Chief Darnell Henry. For the reasons that follow, I will grant the motion to dismiss the action against both individuals.

#### i. *All claims against Director Demaio*

As an initial matter, the City submits that the claims against former Director Demaio should be dismissed because he ceased being a director of the Newark Police Division in 2014, before the events giving rise to this action occurred.[9] (MTD Brief at 14.) Ms. Brinson does not offer facts to the contrary. (*See generally* MTD Opp.) Therefore, all claims against former Director Demaio, whether in an official or personal capacity, are dismissed with prejudice.

#### ii. *Other official capacity claims*

Regarding the official-capacity claims against retired Police Chief Henry, Newark submits that the appropriate party would be the Director of Public Safety. (MTD Brief at 14.) After the accident at issue, Police Chief Henry retired, and Public Safety Director Ambrose temporarily undertook the responsibilities

---

reporting for vehicle pursuits, which resulted in the violation of citizens' constitutional rights, including Plaintiff." (1AC Fifth Count ¶3.)

9     The Court will take notice of this publicly available information. *See Hofman v. Time Warner Cable Inc.*, No. 12-00978, 2013 WL 2460121, at *4 (D.N.J. June 6, 2013) (citing, *Benak v. Alliance Capital Management, L.P.*, 349 F.Supp.2d 882, 888 n. 8 (D.N.J.2004), *aff'd*, 435 F.3d 396 (3d Cir.2006) ("[O]n a motion to dismiss the Court may take judicial notice of publicly available documents to demonstrate that a plaintiff was on notice of the relevant public information."); *see also* David Giambus, *Newark Police Director Samuel DeMaio says goodbye after 28 years in the department*, NJ.com, Feb. 22, 2014 [Newark Police Director Samuel DeMaio says goodbye after 28 years in the department - nj.com](#) (last visited June 24, 2021).

14

of the Office of the Police Chief. (*Id.* at 14-15.) During the pendency of this action, Director Ambrose retired, and Brian O'Hara was appointed as the Public Safety Director. (MTD Reply at 1.) Additionally, Lee Douglas was appointed as the Acting Chief of Police.[10] (*Id.*)

> Federal Rule of Civil Procedure 25(d) provides:
>
> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(d). Because Retired Chief Henry no longer holds his official position, his successor is automatically substituted. *Id.*

For purposes of the official capacity claims, Acting Public Safety Director O'Hara and Acting Chief of Police Lee Douglas are the appropriate parties. The clerk will be directed to substitute them.

### iii. *Personal capacity claims against Chief Henry*

"Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky*, 473 U.S. at 165. To establish personal liability under Section 1983, a plaintiff must show that (1) the official as acting under color of law and (2) caused deprivation of a federal right. *Id.* With respect to a municipal decisionmaker, the plaintiff must allege that the official directed or participated in the alleged unconstitutional policy or custom. *See McTernan c. City of York*,

---

[10] Again, the Court will take judicial notice of this publicly available information. *See, supra*, n.5. *See also* MAYOR RAS J. BARAKA'S STATEMENT ON THE RETIREMENT OF POLICE CHIEF DARNELL HENRY - Insider NJ (last visited June 24, 2021); Department: Public Safety (newarknj.gov) (last visited June 24, 2021); Baraka Announces New Public Safety Director - Insider NJ Department: Public Safety (newarknj.gov) (last visited June 24, 2021); Newark Mayor Baraka Announces Captain Lee Douglas As Acting Police Chief (insidernj.com) Department: Public Safety (newarknj.gov) (last visited June 24, 2021).

15

564 F.3d 636, 658-59 (3d Cir. 2009) (upholding dismissal of Section 1983 claim where plaintiff "d[id] not plead knowledge of such directives by a municipal decisionmaker, such as the Mayor or Police Chief" and did not allege "that either the Mayor or the Police Chief were aware of, let alone directed" the challenged conduct). Further, mere "conclusory and general claims of failure to screen, train, or supervise employees to avoid constitutional violations" are not sufficient. *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014)

Here, Ms. Brinson alleges that (1) the City furthered a *de facto* policy or custom of permitting its officers to engage in unauthorized vehicle pursuits for minor traffic offenses; and (2) that Chief Henry, by virtue of his position as chief executive officer of the Newark Police Department, should be charged with knowledge of and responsibility for such policies, as well as failure to supervise officers. (1AC Fifth Count ¶¶3-19.) I have leniently permitted the plaintiff to explore the City's potential *Monell* liability in discovery. But to attribute an unconstitutional policy to a particular individual, merely by virtue of the responsibilities of his position, goes a step too far. These conclusory allegations do not support a claim against retired Chief Henry. *See Wood*, 568 F. App'x at 103-04. Therefore, I will grant the motion to dismiss the personal capacity claims against retired Chief Henry.

### IV. Conclusion

For the reasons provided, I will (1) deny the Officer Defendants' motion (DE 25) for summary judgment, (2) grant the City's motion (DE 26) to dismiss with respect to all punitive damages claims against it and with respect to the claims against former Director Demaio and retired Chief Henry; and (3) deny City's motion in all other respects. An appropriate order follows.

Dated: July 13, 2021

/s/ Kevin McNulty

**Kevin McNulty**
**United States District Judge**